[Crim. No. 497. Fourth Dist. May 28, 1946.]

THE PEOPLE, Respondent, v. J. C. BALES, Appellant.

Leslie L. Burr for Appellant.

Robert W. Kenny, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with forcible rape and, in a second count, as a different offense but connected in its commission with the first, with the crime of kid-

naping in that he forcibly took the same woman from the intersection of two streets in the town of Westmorland to a point about one and a half miles away. A jury found him guilty on the first count and not guilty on the second count. This appeal followed.

The appellant contends (1) that his conviction under the rape charge is a nullity as being inconsistent with his acquittal on the kidnaping charge, since the same unlawful force is relied upon under both counts, and (2) that the evidence is insufficient to support the verdict on the rape charge since the only acts testified to whereby her resistance was overcome "by force or violence," or where she was prevented from "resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution" were those relating to the kidnaping charge, of which the jury found him not guilty. There is no necessary inconsistency between these verdicts except as it arises from the evidence, and the essential question here is as to whether the evidence is sufficient to sustain the verdict on the charge of rape.

The evidence discloses that about 3 o'clock p. m. on August 10, 1945, the complaining witness, with her friend Mrs. Van Vliet, went to the "Town Pump," a drinking place in Westmorland; that a few minutes later the appellant entered and the complaining witness spoke to him; that she had seen the appellant before but had never spoken to him; that in response to a question she told him that her husband had gone to Riverside and that she did not expect him to return until Saturday night; that they talked and drank beer until 5:30, each drinking three bottles of beer; that the appellant then drove the two women to their homes in his car; that on his invitation they then went with him to Brawley where they visited several bars and had more drinks, and where another man joined the party; that about 7 o'clock they returned to the home of Mrs. Van Vliet; that Mr. Van Vliet then joined the party and they went to the Town Pump where more beer was consumed; and that about 9 o'clock or a little later they all returned to the home of the complaining witness.

Shortly thereafter, the complaining witness walked to a neighborhood drug store to make a purchase. The evidence is conflicting as to what happened during the next hour and a half. The complaining witness testified that as she was returning to her home the appellant drove up to the curb and asked where she was going; that she replied that she was going

home; that he grabbed her, pulled her into the car, closed the door and drove off; that she was scared and jumped out and ran toward a lighted house; that he caught her and put her in the car and she jumped out again after he had driven about two blocks; that he shoved her back in the car and told her if she did not behave herself he would have to knock her out; that she screamed both times and struggled to get away; that after he put her in the car the second time he hit her on top of the head and she bit her jaw; that she then stayed in the car because she was afraid of his threat to knock her out; and that he then drove into the country and stopped on a side road half a block from the main road.

The appellant testified that while he was driving around looking for the complaining witness she came out of a service station and got in the car; that as they were returning to her home she became sick and commenced to vomit; that she put her head out of the open window and, accidentally tripping the latch, fell forward through the opening door; that he reached over and grabbed her clothing and held her to keep her from going completely through the door; that when he succeeded in stopping the car he walked around and assisted her to her feet; that after she got over being sick she asked him to drive her into the country as she wanted to get some air; and that they proceeded to the place described by the complaining witness.

This is all of the evidence material to the kidnaping charge, and the respondent concedes that it is apparent from the verdict that the jury believed the appellant's testimony with respect to this part of the episode and refused to accept that of the complaining witness. This being true, the complaining witness' testimony of a threat and violence in that connection cannot be relied upon in support of her testimony as to what thereafter occurred. (*In re Johnston,* 3 Cal.2d 32 [43 P.2d 541].)

With respect to what subsequently happened, the evidence most favorable to the respondent may be briefly stated. The complaining witness testified that when they arrived at the point she described the appellant stopped, came around to her side of the car, and made a remark to the effect that he would then find out what kind of a woman she was; that when he put his hands under her dress and tried to pull off her pants "I stiffened myself and asked him for a cigarette and asked him to let me put my change in the billfold. He said 'I want those pants off' and he gave a good hard jerk and he

pulled them off and I locked my ankles and he pulled them apart and then he wedged in between my legs and then he done it." Immediately thereafter, in response to leading questions by the district attorney, she testified "He forced me to do it"; that she did not call out; that there was a house near by "but I am almost certain they would not have heard me if I had hollered"; that she would not have permitted this to be done unless she was "under pressure or force"; and that she was "afraid of the threat" (referring to the previous threat to knock her out if she did not behave). She then testified that after the appellant got through they lit cigarettes and smoked them; that she told him she was not going to tell her husband and asked him not to tell; that she was afraid that if she told him she intended to tell her husband "he really might knock me out again"; that she was in fear of the appellant from the time "I was jumping out of the car" to the time they returned to her home; and that she was with the appellant on this trip for an hour and a half.

Mrs. Van Vliet testified that when the appellant and the complaining witness returned her clothes were torn and her hair was mussed; that she had scratches and bruise marks on her; that these were "on her knees where she fell—I guess she fell," and on her arm and her lip; that she asked the complaining witness what was the matter with her and that she did not reply; that the complaining witness then told Mr. Van Vliet that the appellant "had criminally attacked her"; that the appellant denied this and the complaining witness ordered him out of the house; and that he went sometime later. The complaining witness also testified that she reported the matter to the Chief of Police of Westmorland the following morning.

The chief of police testified that no such complaint was made to him; that the two women called on him and asked him "what kind of a man Bales was"; that the complaining witness showed no evidence of bruises but looked like she had had a hard night; that she told him she had been out with Bales the night before and that she had been drinking; and that she asked his advice as to whether or not she should tell her husband.

The evidence of bruises on the person of the complaining witness, if believed, is amply explained by that part of the evidence in connection with the kidnaping charge which was accepted by the jury. With respect to what occurred when the appellant stopped the car off the highway, the evidence is

not sufficient to show either force on the part of the appellant or any real resistance on the part of the complaining witness. The appellant's first remark, to which the complaining witness testified, indicates an intention to find out whether she would consent to his wishes rather than an intent to enforce the same regardless of her consent. Her testimony that, upon his taking liberties with her immediately thereafter, she merely stiffened herself and asked him for a cigarette and for time to put her change in the billfold is a rather strong indication both of the lack of any fear and of the lack of any serious objection. Her next testimony does not indicate that any real force was used by the appellant. There is an entire absence of evidence that she voiced any objection, made any appeal for help or tried to fight or struggle. There is no evidence of any force or threat by the appellant at that time, and no substantial evidence of any apprehension of immediate bodily harm accompanied by apparent power of execution. The evidence material to this charge fails to show either any reasonable resistance or any reasonable excuse for its absence. The old rule that there must be resistance to the utmost has been relaxed (*People* v. *Cline,* 117 Cal.App. 181 [3 P.2d 575]), but not to the extent of doing away with the need of showing some resistance or, in proper cases, showing facts which fairly indicate some good reason for not resisting.

Moreover, later on in her testimony the complaining witness was asked whether she had theretofore stated all that the appellant had said to her during the period in question. She replied "No" and then went on to repeat a remark which she said the appellant made to her after the incident was over and when he was ready to take her home. This remark, which need not be repeated here, almost conclusively indicates that no force or threat of force was used on this occasion, and that none was needed.

The evidence is not sufficient to sustain the verdict of the jury on the rape charge.

The judgment is reversed.

Marks, J., and Griffin, J., concurred.