[Crim. No. 6318. Second Dist., Div. One. Jan. 9, 1959.]

THE PEOPLE, Respondent, v. THOMAS JULIUS TOPHIA, Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), Richard F. Bird and James P. Nunnelley, Deputy Public Defenders, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

LILLIE, J.—Defendant was acquitted of assault with a deadly weapon upon James Wallis and convicted of manslaughter upon a charge of murder of Lela Glenn, for which he was sentenced to the state prison. It is from the judgment of conviction and order denying motion for new trial, defendant appeals.

The information charged defendant in two counts, the first alleging assault with a deadly weapon upon one Wallis, a felony, in violation of section 245, Penal Code; and the second, the murder of one Lela Glenn, as defined in section 187. Acquitting him on the first count, the jury on the second count found defendant guilty of manslaughter, a lesser but necessarily included offense in that of murder.

Appellant's sole ground for reversal is the insufficiency of the evidence to sustain the conviction of manslaughter. He argues that since the jury acquitted him on count one charging assault with a deadly weapon, the two verdicts are inconsistent in that the verdict of not guilty nullified the element of assault necessary to sustain the guilty verdict on the manslaughter charge; and in view of this inconsistency, the conviction of manslaughter, if it is to stand, must be sustained by sufficient evidence apart from that bearing upon the charge of assault with a deadly weapon. He claims such evidence does not exist in the record before us.

Respondent contends that the verdicts are not inconsistent, and even viewed from appellant's position, the evidence is sufficient to support the conviction of manslaughter.

The record discloses that on a Sunday evening Lela Glenn was killed by a gunshot while praying in Mount Calvary Holiness Church. The bullet killing her was fired from a beer tavern across the street, and was discharged from a revolver in defendant's possession when he used it to strike Wallis on the side of the head.

Defendant had acquired the gun three weeks before as

security on a loan. Two days before the homicide, the owner told defendant he could not pay him the money and authorized him to dispose of the gun to satisfy the debt. On Sunday, November 10, 1957, defendant decided to sell it, and being familiar with the kind of persons who frequent Bob's Place, a beer tavern, he went there between 12 and 1:30 p.m. for the purpose of finding someone to buy the gun.

When defendant first acquired the gun, he noticed it was loaded but did not touch it except to carry it home in a paper sack, in which it remained until he removed it to his pocket, on Sunday, and later to his belt, concealed by his coat, where he kept it until it was fired.

Defendant had known Mr. and Mrs. James Wallis for some years. At approximately 4 p.m., Mrs. Wallis entered the tavern. When her husband came in around 5:30, he approached his wife who was dancing with Sam Johnson, "snatched" her from him and "flung" her into defendant's arms. Defendant told him to let her alone and Wallis retaliated that it was none of his business. Words were exchanged among the four and Wallis left, saying he would be back. In about 35 minutes he returned and sat at the counter in the rear. The tavern was crowded. As defendant and a third man started to leave, Sam Johnson and Mrs. Wallis followed them. Wallis intercepted defendant approximately 5 feet from the door and said: "I told you that were my wife I were talking to." An argument ensued wherein defendant and Wallis called each other a "damn fool." Defendant testified Wallis approached him, opening a knife. Defendant said, "Negro, I will blow your brains out," and drew the gun from his belt, holding it by the handle. As Wallis came nearer, defendant swung the gun, hitting him on the left side of the head with the butt. As it struck Wallis it discharged, the bullet going through the boarded window of the tavern in a straight line across the street, through a wooden screen shielding the open doorway of the church, and entered Mrs. Glenn's head, killing her. Only one shot was fired. Immediately thereafter, defendant walked out of the tavern, backing out of the door, pointing the gun at the people inside. Outside, he threw the gun over a fence and was arrested a short time thereafter.

Defendant had been in the army and was familiar with army firearms, revolvers and pistols. He knew the gun was loaded but at no time opened it, took out the bullets, examined it, or tested it. He had no license to carry it.

At the trial, defendant testified he took the gun into Bob's

Place for the sole purpose of selling it; he used it on Wallis only to defend himself against a deadly attack and neither cocked the gun, put his finger on the trigger, nor intended to fire it or use it other than as a club.

Appellant claims that since the jury, in acquitting him on count one, found the assault with a deadly weapon on Wallis did not occur, and since at the same time in convicting him of manslaughter the jury must have found that the assault did occur, the two findings are necessarily factually inconsistent. To remedy the situation appellant would have this court ignore the evidence he believes was rejected by the jury in finding him not guilty on count one and reverse the manslaughter conviction on the ground that the remaining evidence is insufficient to support it. He cites a variety of cases in which the reviewing court in one way or another refused to permit concurrent inconsistent decisions of fact and inconsistent verdicts to stand. In support of his argument he invokes the general principles underlying the doctrines of double jeopardy and res judicata.

Respondent cites section 954, Penal Code, which permits the prosecution to charge two or more different offenses, or the same offense in different counts; and which provides that ''(a)n acquittal of one or more counts shall not be deemed an acquittal of any other count.'' It relies upon this section; *People* v. *Ranney,* 123 Cal.App. 403 [11 P.2d 405] and *People* v. *Derenzo,* 46 Cal.App.2d 411 [115 P.2d 858], involving various counts based upon separate transactions; and a line of cases beginning with *People* v. *Amick,* 20 Cal.2d 247 [125 P.2d 25], holding generally that under section 954, Penal Code, ''an apparent inconsistency of verdicts arising from different interpretations of the same facts afford no basis for reversal of a conviction.''

It is obvious from the authorities cited that for section 954 to control in a situation such as the one at bar, there can exist in the findings supporting the verdicts no *real* factual inconsistency. In the cases in which the court has found a factual inconsistency, rules apart from that laid down in section 954 appear to have been applied. An example is found in the case of *In re Johnston,* 3 Cal.2d 32 [43 P.2d 541], involving a conspiracy situation. Respondent therein argued that section 954 controlled. The court rejecting this contention and citing *People* v. *Kochn,* 207 Cal. 605, stated at page 36 [279 P. 646] : ''The section was manifestly adopted for the purpose of enabling the prosecutor to designate or name the offenses by two

or more names or designations and of making it impossible for the defendant to escape by reason of an error in designation of the crime. The proviso was written into the section for the purpose of declaring the law that a verdict apparently inconsistent shall afford no basis for reversal where the evidence is sufficient to support the conclusion that defendant is guilty of the offense of which he stands convicted.''

Appellant relies mainly upon *People* v. *Novo*, 12 Cal.App.2d 525 [55 P.2d 915], and *People* v. *Bales*, 74 Cal.App.2d 732 [169 P.2d 262], holding that when two findings of fact are in irreconcilable conflict the one less favorable to defendant must be set aside. In *People* v. *Novo, supra,* defendant was originally charged with burglary and assault with intent to commit rape, and was convicted of both second degree burglary and the assault. Since a necessary element of first degree burglary was ''an assault on any person'' and he was exonerated of first degree burglary by the conviction of second degree burglary, and since the same assault was involved in the second count, the court held the conviction on the latter could not stand. In *People* v. *Bales, supra,* the court held a conviction of forcible rape to be inconsistent with an acquittal of kidnapping, in which a verdict of ''not guilty'' nullified the element of fact (force) necessary to sustain the verdict of guilt.

In determining whether the verdicts are inconsistent, in that the findings upon which they are based are in irreconcilable conflict as in the Bales and Novo cases; and if so, whether apart from the evidence rejected by the jury in acquitting defendant of assault with a deadly weapon, there was sufficient evidence to sustain the conviction of manslaughter, we resort to the entire record before us. Defendant herein was charged with two separate offenses involving two separate victims, there being no reason apparent on the face of the information why he could not be convicted on both counts. Defendant was acquitted of assault with a deadly weapon and convicted of involuntary manslaughter.

The ''assault'' element of the offense of assault with a deadly weapon as defined by section 245, Penal Code, consists of ''an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another'' (Pen. Code, § 240) ; and the weapon in such a felony assault must be a ''deadly'' one. (Pen. Code, § 245.)

Manslaughter is the unlawful killing of a human being without malice and to be involuntary it must have been done

"in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection" (Pen. Code, § 192, subd. 2).

In acquitting defendant on the felony charge of assault with a deadly weapon, the jury could have found that he did or did not use a deadly weapon but that there was no assault, he having acted in self-defense; or the jury could have found that defendant did not act in self-defense, there being an assault, but that he did not use, as to Wallis, a "deadly weapon."

Regardless of its finding in connection with the kind of weapon used, if the jury predicated its acquittal upon the finding defendant acted in self-defense and hence there was no assault, inherent therein is also the finding that the act of defendant in defending himself was lawful. If, therefore, there is sufficient evidence in the record to justify a further finding that the act was such as might have produced death and that defendant acted "without due caution and circumspection," the conviction of involuntary manslaughter under section 192, subdivision 2, Penal Code, must be upheld.

Where deadly force is threatened, such as in the case at bar, wherein Wallis, with an open knife, advanced toward defendant threatening to cut his throat; and deadly force is used by way of self-defense as here, where defendant used the butt of a heavy, loaded revolver as a bludgeoning weapon; the requirement under section 192, subdivision 2, Penal Code, of "a lawful act which might produce death" is met.

That defendant in using the loaded gun as a defense weapon, acted "without due caution and circumspection" is clear from the record, under the general rules governing the sufficiency of evidence to support a conviction. (*People* v. *Newland*, 15 Cal.2d 678, 681-682 [104 P.2d 778].) It has repeatedly been held that a homicide resulting from the negligent handling of firearms may be manslaughter (*People* v. *Carmen*, 36 Cal.2d 768, 776 [228 P.2d 281]). It is universally accepted that a loaded gun is so dangerous an instrument that a high degree of caution and circumspection is required of the person handling it. (*People* v. *Freudenberg*, 121 Cal.App.2d 564 [263 P.2d 875].) "From the time of the common law, firearms were recognized as a dangerous instrumentality because of their great potential harm and in the interest of the preservation of human life and safety a high degree of care was demanded of those who use them (citations)." (*People* v.

*Freudenberg,* at page 580, *supra.*) The degree of care is even greater where the weapon is handled in a crowded place (*People* v. *Sidwell,* 29 Cal.App. 12, 21 [154 P. 290]). This is true even though the person carrying the gun has no intention of using it (*People* v. *Carmen,* 36 Cal.2d 768 [228 P.2d 281]). In the Carmen case, the court said at page 776: "Accepting defendant's testimony that he stumbled, and the gun went off, and that he did not intend to shoot or injure anyone, yet he was carrying the gun with a cartridge in the firing chamber, with the gun pointed forward, approaching a car occupied by persons, the jury would have been justified in concluding that he did not act with 'due caution and circumspection.' "

 Knowing the gun to be loaded, defendant herein intentionally took it out of a place of comparative safety (a paper sack), putting it in his belt where it would be easily available to his use, and carried it into a crowded beer tavern, one of the most likely places in which an altercation could start. The defendant stayed approximately five hours in the tavern, a place which became increasingly crowded, and in which people were drinking. Defendant was familiar with Bob's Place and the type of people frequenting it and went there purposefully to seek out the type of persons who would be interested in buying a firearm. Defendant, after a preliminary verbal skirmish with Wallis, did later actually become engaged in an altercation with him, at which time the tavern was crowded with people. Defendant had often been to Bob's Place and knew its location and proximity to occupied premises. Under these circumstances, a man carrying a heavy, loaded revolver, which he knew or should have known was ready to fire, into a crowded beer tavern across from an occupied church, created a high risk of death to persons in and out of the tavern, who were within firing range. His subsequent use of the loaded gun which he had made easily available to himself, even in self-defense and as a bludgeon rather than a firearm, in the crowded room, created even a greater risk of death or injury to innocent persons. Clearly these circumstances justified any finding of the jury that the defendant's acts were committed "without due caution and circumspection." (*People* v. *Penny,* 44 Cal.2d 861 [285 P.2d 926].)

Defendant, having been in the army, was familiar with firearms and had the gun three weeks but at no time inspected it, tested it, or removed the bullets. He did, however, know

it was loaded. He denied it was cocked but the jury could well have believed otherwise. To have fired, it must either have been cocked or defective He had never examined the gun.

If, on the other hand, the jury found there was no self-defense and an assault existed but the use of the gun on Wallis in the manner indicated by the record was not such as to constitute it a "deadly weapon" within the meaning of section 245, Penal Code, the record likewise supports the conviction, on the theory the killing occurred in the commission of an unlawful act, not amounting to a felony.

A deadly weapon is one likely to produce death or great bodily injury. (*People* v. *Fuqua,* 58 Cal. 245, 247.) However, the deadly character of the weapon may depend on the manner in which it is used, in which case the determination is one for the jury under proper instructions (*People* v. *Fuqua,* 58 Cal. 245; *People* v. *Simpson,* 134 Cal.App. 646, 651 [25 P.2d 1008].)

Defendant did not use the gun as a firearm but as a club or bludgeon. Whether it constituted a deadly weapon as to Wallis was for the determination of the jury. If the jury under the instructions given did not believe the revolver, as used in connection with Wallis, constituted a deadly weapon as to him then, if the evidence is sufficient to support a finding of unlawful assault, the killing of Mrs. Glenn constituted involuntary manslaughter. (Pen. Code, § 192, subd. 2.)

An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" (Pen. Code, § 240) and constitutes a misdemeanor (Pen. Code, §§ 17, 241). A battery, also a misdemeanor (Pen. Code, §§ 17, 243), is a wilful and unlawful use of force or violence on the person of another. (Pen. Code, § 242.)

The "present ability" existed when defendant pulled out a heavy weapon in the course of his altercation with Wallis; and the attempt to commit a "violent injury," "any wrongful act committed by means of physical force against the person of another," (*People* v. *Bradbury,* 151 Cal. 675, 676 [91 P. 497]; *People* v. *McCoy,* 25 Cal.2d 177, 191 [153 P.2d 315]) occurred when defendant used the butt of the gun to strike Wallis, a successful attempt to use "physical force" on Wallis. And as to the "unlawfulness" of the assault, if defendant did not act in self-defense his acts with respect to Wallis were unlawful (*People* v. *Lynch,* 101 Cal. 229 [35 P.

860]; Pen. Code, § 693) not amounting to a felony. This applies also to the battery (Pen. Code, § 692) and his wilful use of force on Wallis satisfies every element of battery.

As to whether defendant acted in self-defense, the issue was a factual one for the jury. Two witnesses testified defendant and Wallis swore at each other and then defendant said, "Negro, I will blow your brains out," and drew his gun. Under the rules set out in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778], we believe the evidence was sufficient to support a finding that defendant drew and used the gun not in self-defense but in the course of a deliberate assault on Wallis. Of all those who testified, only the defendant claimed Wallis advanced on him with a knife just before the time defendant drew his gun. The only witnesses to the altercation testified they saw no knife in Wallis' possession, and no knife was offered in evidence. The jury might well have rejected defendant's testimony and concluded he struck Wallis under no circumstance of self-defense. Since, then, the killing of Mrs. Glenn occurred in the course of this assault, an unlawful act not amounting to a felony, the conclusion of involuntary manslaughter follows (Pen. Code, § 192, subd. 2; *People* v. *LeGrant*, 76 Cal.App.2d 148 [172 P.2d 554].)

A careful examination of the record convinces us that there exists no inconsistency in the verdicts, the evidence is sufficient to support the conviction of manslaughter and the jury was justified in returning such a verdict.

For the foregoing reasons the judgment and order denying motion for new trial are and each is affirmed.

White, P. J., and Fourt, J., concurred.