[Crim. No. 6969. Second Dist., Div. One. Aug. 31, 1960.]

THE PEOPLE, Respondent, v. WILLIAM EARL BOBO, Appellant.

William Earl Bobo, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Peter T. Kennedy, Deputy Attorneys General, for Respondent.

LILLIE, J.—Defendant was charged with assault with a deadly weapon with intent to commit murder, and two prior felony convictions. He admitted the latter and was tried on the main charge before a jury, which found him guilty. His motion for a new trial was denied and he was sentenced to the state prison. We treat the request to review "his case" as an appeal from both the judgment and the order denying the motion for new trial.

Although appellant has neither set forth any facts or referred to the record, nor advanced any legal argument based on the evidence, from his citations we deem his main contention to be that the evidence is insufficient to support the verdict—however, having admitted the shooting of the victim, appellant has limited the issue on the insufficiency of the evidence to the validity of his plea of self-defense. He also claims that the trial court erred in denying his motion for new trial on the

ground that "the evidence does no more than cast a suspicion" upon him. We find no merit in either contention.

Viewing the evidence in the light most favorable to the judgment (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]), we find nothing in the record before us to justify this court's interference with the jury's acceptance of the victim's version of what occurred; and we cannot say as a matter of law that defendant acted in self-defense.

Late in the evening of March 9, 1959, Clifford Frank Hoell was sitting in a bar drinking beer. Peggy Brooks, a stranger, walked over, had a drink with him and invited him to her apartment. Leaving his automobile at the bar he rode with her to her apartment, stopping at a liquor store to purchase vodka. After paying for the liquor, he had $68 left, $18 of which he had in his wallet and five $10 bills in his shirt pocket. They arrived at Peggy's apartment around 1-1:30 a.m., had a drink, and were lying on the couch unclothed when another woman, Sally Foster, walked in. Peggy and Sally went into the kitchen where they talked for a while, after which they both returned to the couch and sat down with Hoell. As the two women continued talking, he got up and went into the kitchen to check his clothes; his money was missing from his wallet and shirt, whereupon he accused the women of stealing it. An argument ensued during which defendant walked into the apartment and demanded of Hoell: "What are you doing with my wife?" Hoell told him "nothing," that his money was gone and that he had "been taken." He did not accuse defendant but said to him, "I know I've been taken. So that is it. I've got to have some money to get a cab and get back to my car," and asked him for $5.00. Defendant told him he did not have his money and was not going to give him any. Having dressed, Hoell, with the three, walked out of the apartment into the street where he again said to defendant, "I want to get to where my car is. I've got to have some cab money to at least find my car and get it. I'm willing to forget it; chalk it up as an experience." As defendant said he did not have his money, Hoell looked down and saw a knife in defendant's hand; it had a 6-inch blade and defendant was pointing it toward Hoell. Defendant was standing about 10 feet from Hoell and the latter told defendant to put the knife away; he did not do so but continued to stand there looking at Hoell pointing the knife at him. Hoell, an ex-Marine who knew how to disarm a man with a knife, fearing defendant would cut him and afraid to turn his back to walk away, told defendant,

"If you don't put it away, I'm going to take it away from you." Suddenly, "in a split second," without warning of any kind, defendant with his free hand pulled out a gun and started shooting at Hoell. The first two bullets were aimed at, and hit, his chest; he started to fall back and passed out. Defendant continued to fire two more shots into Hoell's body whereupon he and the two women fled. Defendant ran to his car, picked up Sally Foster, and drove around the block, at which time he gave the gun to her to throw out the window. She did so and it was later recovered. Defendant drove past Hoell's body lying in the street and left the vicinity. Six days later he was arrested in Las Vegas. Hoell was taken to the hospital by police ambulance where he stayed 11 days. Two bullets had gone through his chest, puncturing his lung and lodging in his back, a third through his leg, and a fourth through his side. Hoell at no time touched defendant and had no weapon in his possession.

On March 13, en route from Las Vegas where he had been apprehended, defendant told Officer Jackson that he drove Sally Foster to Peggy's apartment around 2 a.m.; at first he waited in the car while she went in, and then later followed her; as he entered the apartment an argument about money was in progress and he took from an overstuffed chair a loaded pistol he knew Peggy kept there; he and the women left the apartment with Hoell following; as they arrived in the street, Hoell reached for his back pocket and he (defendant), standing about 10 feet away, shot Hoell a number of times; Sally got into the car and he drove around the block where she threw the gun out of the window; they passed Hoell's body lying in the street and then he left for Las Vegas.

Later at the Police Building, defendant told substantially the same story, but added—that Hoell "took a swing at him and hit him"; that Hoell made a move toward his back pocket but he saw nothing in his hand; and that he was standing about four feet from him. At no time during either of these conversations did defendant mention having first fired two shots into the ground; and at all times defendant denied he ever had a knife in his possession.

A neighbor of Peggy Brooks, S. H. Monroe, testified that on the night in question he heard four shots fired; he said that later Sally Foster came to see him and told him that Hoell was an ex-Marine, used to knives, and he was going to take the *knife* away from the defendant.

At the trial, defendant pleaded self-defense, admitting he

shot Hoell. He testified that he knew Peggy Brooks as a prostitute and had rented the apartment for her (defendant's own testimony discloses that he was not married to Peggy Brooks). He told of going there and about a scuffle inside where Hoell took him by the coat collar and demanded his money. Defendant took a pistol he knew Peggy kept in an overstuffed chair and held it on Hoell, backing out of the door. He went down the steps onto the street with Hoell following him. When he reached the sidewalk Hoell "swung" at the defendant hitting him in the shoulder. He walked toward his car, turned around and saw Hoell approaching; he also saw Hoell reach into his back pocket and come out with "something" in his hand, he did not know exactly what it was—he later said it was dark but "it appeared (to me) to be a knife"; defendant backed up and took the gun out of his pocket and shot it into the ground. Hoell then had his hand on him and, being afraid, defendant shot at him "one time." He testified he pulled the trigger four or five times in all. Defendant drove around the block twice, each time looking at the wounded man in the street, and then left for Las Vegas. Peggy Brooks testified that Hoell reached back "like he was going after something," and that defendant fired into the ground and in all, four or five shots were fired. Sally Foster did not testify.

█ Whether defendant, as a reasonable man, was justified in believing under all of the circumstances that he was threatened with imminent danger as to justify the use of a deadly weapon in self-defense was a question of fact for the jury. (*People* v. *Tophia,* 167 Cal.App.2d 39 [334 P.2d 133] ; *People* v. *McAuliffe,* 154 Cal.App.2d 332 [316 P.2d 381] ; *People* v. *Torres,* 94 Cal.App.2d 146 [210 P.2d 324] ; *People* v. *Gallow,* 106 Cal.App.2d 647 [235 P.2d 660].) As it had a right to do, it rejected the defense version of what occurred and gave credence to the testimony of the prosecution's witness (*People* v. *Zilbauer,* 44 Cal.2d 43 [279 P.2d 534] ; *People* v. *Eggers,* 30 Cal.2d 676 [185 P.2d 1]) ; with the jury's finding on the factual conflict we will not interfere.

█ The evidence, even the testimony of the defendant and his witness, Peggy Brooks, reveals that at the time in question Hoell had no weapon of any kind in his possession ; no weapon was ever found on the wounded man or at the scene of the shooting. It is also apparent, contrary to defendant's testimony that he had no knife in his possession but in accord with Sally Foster's later statement to the witness Monroe, that immediately prior to the time defendant pulled his

gun and shot Hoell, defendant standing near him continued to menace Hoell with a knife with a 6-inch blade. Sally Foster, who was not called to testify at the trial, but who was present at the shooting, later told Monroe that "the guy (Hoell) said he was an ex-Marine and that he was used to knives, and that he was going to take the knife away from him (defendant)." The record also establishes that Hoell, realizing that he had been robbed and was in no position to complain, wanted to forget the entire matter and "chalk it up as an experience"; and after defendant turned down his request for enough money to get his car, Hoell was willing to "forget about it" and wanted "no trouble." Hoell neither touched defendant nor threatened him and it is apparent he would then have left had not defendant pulled his knife. Afraid that defendant would cut him, Hoell told him to put it away; when he did not do so and continued to stand only a short distance away pointing the blade in his direction, fearing an attack from the rear if he turned his back to walk away and thinking defendant might believe him and let him go, Hoell again told defendant if he did not put the knife away he would take it away from him. It is clear that Hoell, who wanted no trouble, had no intention of coming in contact with defendant or touching him until defendant persisted in menacing him with the knife, and then intended only to disarm him in order to protect himself, and leave. Hoell had made no threats to harm defendant, was unarmed, and made no move toward him. Defendant who was closely matched as to size and weight with Hoell, was in no physical danger, for to avoid any contact with Hoell, all defendant had to do was to put away the knife; instead before Hoell could move, defendant suddenly, without warning, pulled out the gun, aimed at, and twice shot, him in the chest and shot him twice again as he fell to the ground. Defendant's testimony that he first shot twice into the ground, then shot once or twice again into the ground, and only when Hoell advanced on him did he shoot him "one time," is, of course, contrary not only to the physical evidence of the four bullet holes in the body of the victim and the testimony of the several witnesses that four shots were fired, but to his own testimony and that of Peggy Brooks that he fired four or five times (four of which he fired into Hoell's body). Moreover, in resolving the factual conflict and determining the credibility of defendant's testimony, the jury had a right to consider, among other things, his admission that he was a twice-convicted felon, his admitted flight from the scene of the shooting and

his arrest in another state. Under the rules laid down in *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778], we deem the evidence to be more than sufficient to support the implied finding of the jury that defendant drew and used the gun, not in self-defense but in the course of a deliberate assault on Hoell. We cannot say, as a matter of law, that defendant acted in self-defense. (*People* v. *McAuliffe*, 154 Cal.App.2d 332 [316 P.2d 381].)

In connection with the denial of his motion for new trial, appellant, citing *People* v. *Draper*, 69 Cal.App.2d 781 [160 P.2d 80] and *Abbot Kinney Co.* v. *City of Los Angeles*, (Cal. App.) 340 P.2d 14, contends that the motion should have been granted "where the evidence does no more than cast a suspicion upon the defendant," and that this court must make an independent appraisal of the evidence to determine whether the judgment affects a miscarriage of justice. The opinion in the latter case, a civil matter, has been superseded by an opinion of the Supreme Court which granted a hearing (53 Cal.2d 52 [346 P.2d 385]) which does not allude to the point for which it was cited by appellant.

He advances on this appeal no other ground for his motion except that the verdict is contrary to the evidence; such a ground presents an issue to the trial court upon which an appellate court cannot pass. In this connection the Supreme Court said in *People* v. *Sarazzawski*, 27 Cal.2d 7, at page 15 [161 P.2d 934], "We cannot appraise the weight of the evidence. Appraising the weight of the evidence is exclusively the province of the trial court. We may review evidence only for its legal sufficiency." Appellant was entitled to two decisions on the evidence in the lower court—one by the jury which found him guilty, and one by the trial judge in passing on his motion for new trial. *People* v. *Cesena*, 18 Cal. App.2d 727 [64 P.2d 732], cited by the Court in *People* v. *Sarazzawski*, 27 Cal.2d 7, 15 [161 P.2d 934], held that in considering the sufficiency of the evidence to support the jury's verdict, the trial court in passing on a motion for new trial is not bound by the conflicts in the evidence, and has the duty of considering the credibility of witnesses, their manner and appearance in testifying and the proper weight to be accorded the evidence; and while the jury verdict should not lightly be vacated, the trial court must again review the cause before ruling on an application for a new trial. The trial judge has a broad discretion in passing on a motion made on the ground the verdict is contrary to the evidence, and his

action thereon will not be disturbed by an appellate court unless it clearly appears he abused his discretion. (*People* v. *Richard*, 101 Cal.App.2d 631 [225 P.2d 938]; *People* v. *Sarazzawski*, 27 Cal.2d 7 [161 P.2d 934].)

 The record discloses that the trial court carefully considered these matters and the law applicable to the court's duty in passing on the motion for new trial. Inasmuch as the evidence amply supports the verdict, the implied finding of the jury against defendant's plea of self-defense is wholly justified. We are unable to say that the trial court abused its discretion in denying the motion.

For the foregoing reasons the judgment and the order are affirmed.

Fourt, Acting P. J., and Scott (Robert H.), J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.