Filed 3/11/24  In re Dante C. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re DANTE C., a Person Coming Under the Juvenile Court Law. | B324829 |
| | (Los Angeles County Super. Ct. No. FJ57841) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| DANTE C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Robert J. Totten, Commissioner.  Affirmed as modified.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and Seth P. McCutcheon, Deputy Attorney General, for Plaintiff and Respondent.

——————————————

## INTRODUCTION

After finding Dante C. committed assault by means likely to produce great bodily injury and robbery, the juvenile court declared Dante a ward of the court under Welfare and Institutions Code section 602 and placed him on home probation for six months. Dante appeals from the court's jurisdiction findings and disposition order, arguing substantial evidence did not support the findings on either count. Dante also contends his counsel provided ineffective assistance by failing to object when the People introduced a message sent on a social media networking service from Dante's brother to the victim. We conclude that substantial evidence supported each of the findings and that Dante has not shown his counsel provided ineffective assistance.

Dante also argues, the People concede, and we agree that—because the juvenile court placed Dante on home probation—the court erred in setting a maximum term of confinement of four years. Therefore, we strike from the disposition order the term of confinement and affirm the jurisdiction findings and the order as modified.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *Dante and Some Friends Attack Joseph W. at a Park; the People File a Petition Under Welfare and Institutions Code Section 602*

Dante and Joseph W. were schoolmates.  They had been friends, but recently had been arguing and expressing hostility toward each other.  One morning Joseph was at a park near the school he and Dante attended.  Joseph was wearing a backpack that contained a laptop, a speaker, and his wallet.

Dante was at the park with his younger brother, Fabricio, and three other boys from the school, including a friend named Brandon.  When Dante's group encountered Joseph, a one- to two-minute fight ensued.  Someone used a cell phone to record part of the fight.  The beginning of the video showed Dante and Joseph fighting each other, while the other boys watched.  But after Joseph knocked Dante to the ground and kicked Dante in his torso, three of the boys from Dante's group intervened, dragged Joseph to the ground, and began hitting and kicking him.  Dante got up, joined the other boys beating up Joseph, and kicked Joseph several times while Joseph was on the ground, including at least once to Joseph's head or neck.  Joseph lost the backpack during the fight; he never recovered it or any of its contents.

The People filed a petition under Welfare and Institutions Code section 602 for an order adjudging Dante a ward of the

court.[1] The People asserted two counts against Dante: assault by means likely to produce great bodily injury and robbery.

B.    *Joseph Testifies About the Fight*

It was undisputed Dante and Joseph had been "talk[ing] trash" to each other in the weeks and days leading up the fight. Joseph testified that, a few weeks before the fight, Dante sent him a text message referring to Joseph's dead relatives and stating Dante was "going to catch [Joseph] lacking." Meanwhile, Joseph insulted Dante and said, "You need a beating, huh?" Joseph sent Dante another text message, also before the fight, that read: "lucky [there] wasn't school today had me waiting smoking n posted waiting to beat yo ass pray for tomorrow."

When describing the fight, Joseph testified Dante and the other boys in the group approached him. Dante was clenching his fists and calling Joseph a "bitch" and other "offensive slurs." Either Dante or Brandon threw the first punch (at Joseph). The other boys in the group joined in and attacked Joseph. Joseph was attempting to remove his backpack "to get better leverage," but he had trouble getting it off; eventually, while Joseph was on the ground, either Brandon or Fabricio pulled the backpack off Joseph's shoulders.

When shown the partial video recording of the fight, Joseph explained the recording did not include the beginning of the fight when the other boys first "jumped" him and took his backpack. According to Joseph, the video showed the end of the fight, after the other boys had backed away and gave Dante a chance to fight

---

[1]    Dante was 17 years old on the day of the fight and during all relevant proceedings.

4

Joseph by himself.  The other boys then jumped in and jointly attacked Joseph (as depicted in the video) a second time.

Joseph testified that after the fight he saw Dante and the other members of the group sitting on a bench in the park. Joseph's backpack was directly underneath where Brandon was sitting.  When Joseph approached and asked about his backpack, Brandon took a swing at Joseph, laughed, and told Joseph to leave before he "got [his] ass beat" again.  Joseph left without the backpack.  Joseph suffered headaches, a broken finger, and a shoulder injury from the fight.

Joseph testified that a few days after the fight Dante sent him a message through a social media service saying he was "thankful for the speaker" he received.  Joseph also discovered that someone had tried to purchase a computer using his credit card and his account on an e-commerce technology platform that was linked to the laptop in the stolen backpack.  The intended shipping address for the computer was Brandon's residence.

C.      *Dante Gives His Version of the Fight*

Dante gave a different version of the fight and the events leading up to it.  According to Dante, Joseph had threatened his friends and family before the fight.  On the day of the fight, Dante was riding a scooter with his brother, heading through the park on his way to school.  When he saw Joseph, the two "exchang[ed] words," Joseph called him a "bitch," "mf," and "all types of insults," and Joseph initiated the fight by swinging at Dante.  The two fought "one-on-one" with each other for a couple of minutes; at one point Dante was "trying to back up," but Joseph motioned with his hand to keep fighting (a motion depicted in the video).

According to Dante, the other boys who intervened in the fight were just random kids he knew from the park. Dante "never" asked them to help him fight Joseph. Dante denied taking Joseph's speaker and denied sitting with Brandon after the fight, stating he immediately went home.

While questioning Dante, the prosecutor introduced a copy of messages exchanged through a social media networking service between Joseph and Fabricio. Joseph sent the following message: "Do whatever bro just know everything you do comes back good n bad karma." Fabricio responded: "U think I liked what Dande di? Rob sumone That's bummy to . . . Me."

D.    *The Juvenile Court Sustains the Petition*

The juvenile court sustained the petition, finding Dante committed assault by means likely to produce great bodily injury and second degree robbery. The court found credible Joseph's testimony that Dante's group attacked him first and Joseph's testimony about "what happened after the fight." The court found Dante's testimony less credible.

The court declared Dante a ward of the court, placed him on home probation for six months under the supervision of the probation department, and ordered him to pay restitution as determined by the probation department. The court also set a maximum term of confinement of four years. Dante timely appealed from the jurisdiction findings and disposition order.

# DISCUSSION

### A.   *Substantial Evidence Supported the Juvenile Court's Findings*

#### 1.   *Standard of Review*

"'The same standard governs review of the sufficiency of evidence in adult criminal cases and juvenile cases . . . .'" (*In re A.G.* (2020) 58 Cal.App.5th 647, 653; see *In re Gary F.* (2014) 226 Cal.App.4th 1076, 1080; *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) "'[W]e ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" . . . [W]e must examine the record independently for "'substantial evidence—that is, evidence which is reasonable, credible, and of solid value'" that would support a finding beyond a reasonable doubt.'" (*People v. Navarro* (2021) 12 Cal.5th 285, 302; see *People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780; *In re R.C.* (2019) 39 Cal.App.5th 302, 309.) "In doing so, we '. . . presume the existence of every fact that the [juvenile court] could reasonably have deduced from that evidence.'" (*Navarro*, at p. 302; see *Holmes, McClain and Newborn*, at p. 780; *In re D.T.* (2015) 237 Cal.App.4th 693, 698.) "'We must also "accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence."'" (*Navarro*, at p. 302; see *People v. Baker* (2021) 10 Cal.5th 1044, 1103.) "We do not question the credibility of a witness's testimony, so long as it is 'not inherently improbable,' nor do we reconsider the weight to be given any particular item of evidence." (*Navarro*, at p. 302; see *People v.*

*Gaines* (2023) 93 Cal.App.5th 91, 133; *In re Paul C.* (1990) 221 Cal.App.3d 43, 54.)

> 2.   *Substantial Evidence Supported the Finding*
>      *Dante Committed Assault by Means Likely*
>      *To Produce Great Bodily Injury*

Penal Code section 245, subdivision (a)(4), "makes it a crime to 'commit[ ] an assault upon the person of another by any means of force likely to produce great bodily injury.'" (*People v. Aguayo* (2022) 13 Cal.5th 974, 983.) Dante does not dispute that he committed an assault or that he did so by means of force likely to produce great bodily injury. Dante argues only the People failed to prove he did not act in self-defense.

"'To justify an act of self-defense for [an assault charge under Penal Code section 245], the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him.'" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064; see *People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 212; *People v. Brady* (2018) 22 Cal.App.5th 1008, 1014.) "'In other words, the defendant's belief must both subjectively exist and be objectively reasonable.'" (*Cruz-Partida*, at p. 212; see *Brady*, at p. 1014.) Moreover, the "threat of bodily injury must be imminent [citation], and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.'" (*Minifie*, at pp. 1064-1065; see *Cruz-Partida*, at p. 212; *Brady*, at p. 1014.) "'[I]t is not necessary for the defendant'" to prove "'that the self[-]defense was true'"; "'if the evidence is sufficient to raise a reasonable doubt as to whether the defendant was justified, then he is entitled to an acquittal.'" (*People v. Sanchez* (1947)

30 Cal.2d 560, 571; see *People v. Lloyd* (2015) 236 Cal.App.4th 49, 62.)

Substantial evidence supported the juvenile court's finding beyond a reasonable doubt Dante was not acting in self-defense when he committed the assault; indeed, the evidence was not particularly close on this issue. First, the doctrine of self-defense "'may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified.'" (*People v. Enraca* (2012) 53 Cal.4th 735, 761; see *People v. Eulian* (2016) 247 Cal.App.4th 1324, 1333.) "Thus, a victim may respond to an attacker's initial physical assault with a physical counterassault, and an attacker who provoked the fight may not in asserting he was injured in the fray claim self-defense against the victim's lawful resistance." (*Eulian*, at p. 1333; accord, *People v. Ramirez* (2015) 233 Cal.App.4th 940, 947; see *People v. Sawyer* (1967) 256 Cal.App.2d 66, 75, fn. 2 [trial court properly instructed the jury that, "'[w]here a person seeks or induces a quarrel which leads to the necessity in his own defense of using force against his adversary, the right to stand his ground and thus defend himself is not immediately available to him'"].)

Under Joseph's version of events (which the juvenile court credited), Dante and his companions were the aggressors who provoked the fight, and Joseph was the victim who resisted. Dante approached Joseph, fists clenched and cursing, with four other boys and attacked ("jumped") Joseph. When Dante's companions temporarily withdrew from the fight, Joseph fought back against Dante and managed to land a couple of blows. However, Dante (after receiving assistance from his companions)

9

later kicked Joseph while Joseph was on the ground, including at least one time to his head. Thus, even if Dante reasonably believed at some point during his one-on-one fight with Joseph that injury was imminent, Dante—as a member of the group that instigated the assault against Joseph—could not claim that kicking Joseph while he was on the ground was a reasonable means to defend himself.

Dante, of course, gave a different version of the events. He asserts that he did not start the fight and that, "[i]f anything, the evidence showed that [Dante] and Joseph engaged in mutual combat." As discussed, however, Joseph testified the group attacked him. (See *In re Daniel G.* (2004) 120 Cal.App.4th 824, 830 ["The testimony of just one witness is enough to sustain a conviction, so long as that testimony is not inherently incredible."]; *In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497 ["the evidence of a single witness is sufficient for proof of any fact"].) The juvenile court found Joseph's testimony was more credible, stating it "had no problem believing that at the very beginning . . . this was not mutual combat" and that "there was a five on one." We review the evidence in the light most favorable to the prosecution, not the defendant, and "[w]e cannot reject the testimony of a witness that the [juvenile court] chooses to believe unless the testimony is physically impossible or its falsity is apparent without resorting to inferences or deductions." (*Daniel G.*, at p. 830.) Nothing in Joseph's testimony was physically impossible or apparently false, nor does Dante even argue it was.

Second, even if the fight began as mutual combat (or if Joseph first attacked Dante), substantial evidence still supported the juvenile court's finding beyond a reasonable doubt Dante was

10

not acting in self-defense during the latter portion of the assault. As discussed, to justify an assault as an act of self-defense, the threat of bodily injury must be imminent and the use of force in self-defense must be reasonable. (*People v. Minifie, supra,* 13 Cal.4th at p. 1064.)

The video recording of the fight showed three members from Dante's group intervened to help Dante, dragged Joseph to the ground, and repeatedly punched and kicked him. At this point, Joseph was not fighting back, instead using his hands and arms to shield himself against the attack by Dante's companions. Dante returned to the group attacking Joseph and kicked Joseph several times while he was on the ground (including once or twice to the head). The juvenile court could find beyond a reasonable doubt that, by the time Dante decided to get his final kicks in, any threat of bodily injury to Dante had subsided and that therefore Dante's use of force was excessive. (See *People v. Harris* (1971) 20 Cal.App.3d 534, 537 ["'Even if it is assumed . . . that [the victim] began the affray, the jury could well have found that the force used by [the defendant] under the circumstances far exceeded the amount of force necessary to defend himself.'"].) These are precisely the types of factual findings we do not disturb on appeal. (See *id.* at pp. 537-538 [whether the defendant had reasonable grounds to fear injury and whether his use of force was reasonable "presented questions of fact for the jury, with whose conclusion we will not interfere"]; *People v. Bobo* (1960) 184 Cal.App.2d 285, 289 ["[w]hether defendant, as a reasonable man, was justified in believing under all of the circumstances that he was threatened with imminent danger . . . was a question of fact for the jury," and "with the jury's finding on the factual conflict we will not interfere"]; see also *People v. Nguyen* (2015)

11

61 Cal.4th 1015, 1044 [""where some of the evidence tends to show a situation in which a [use of force in self-defense] may not be justified then the issue is a question of fact for the jury to determine""].) Indeed, when counsel for Dante showed Dante the video of him kicking Joseph, Dante did not say he was defending himself; he said he kept kicking Joseph because he "was very angry."

### 3. *Substantial Evidence Supported the Finding Dante Committed Robbery*

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211; see *People v. Gomez* (2008) 43 Cal.4th 249, 254.) Robbery is """a species of aggravated larceny."" [Citation.] Theft by larceny may be committed without force or the threat of violence and may be completed without the victim ever being present. [Citation.] To elevate larceny to robbery, the taking must be accomplished by force or fear and the property must be taken from the victim or in his presence." (*Gomez*, at p. 254; see *People v. Anderson* (2011) 51 Cal.4th 989, 994.)

Dante argues there was no evidence he took Joseph's backpack or any of the items in it (including the speaker) from Joseph's person or in Joseph's immediate presence.[2] Dante cites Joseph's testimony that it was either Brandon or Fabricio, not

---

[2] For purposes of robbery, "'[t]aking,' . . . has two aspects: (1) achieving possession of the property, known as 'caption,' and (2) carrying the property away, or 'asportation.'" (*People v. Gomez*, *supra*, 43 Cal.4th at p. 255.)

12

Dante, who removed the backpack from his shoulders and that the backpack was sitting directly under where Brandon—not Dante—was sitting on the bench after the fight. But even if Dante was not the person who picked up Joseph's backpack, substantial evidence supported the juvenile court's finding beyond a reasonable doubt Dante aided and abetted the robbery.

"Under [Penal Code] section 31, '[a]ll persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed.'" (*People v. Delgado* (2013) 56 Cal.4th 480, 486.) "'A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime.'" (*Delgado*, at p. 486.) "'[F]actors for determining aiding and abetting of a robbery include presence at the scene of the crime, companionship, and conduct before and after the crime, including flight.'" (*People v. Burgos* (2022) 77 Cal.App.5th 550, 560, review granted July 13, 2022, S274743[3]; see *In re Juan G.* (2003) 112 Cal.App.4th 1, 5; *People v. Haynes* (1998) 61 Cal.App.4th 1282, 1294.)

Dante approached Joseph with a group that included Brandon and Fabricio, joined in the assault that enabled either Brandon or Fabricio to take Joseph's backpack, and sat with

---

[3] The Supreme Court granted review in *People v. Burgos*, *supra*, 77 Cal.App.5th 550 and will decide whether Penal Code section 1109, which governs bifurcation at trial of gang enhancements from the substantive offense or offenses, applies retroactively to cases that are not yet final.

Brandon and the other members of the group immediately after Brandon gained possession of the backpack. This evidence was sufficient to show Dante aided and abetted the robbery, even if he was not the one who took the backpack from Joseph. (See *People v. Partee* (2020) 8 Cal.5th 860, 869 [under Penal Code section 31, "the word 'aid' . . . mean[s] "'to assist, 'to supplement the efforts of another'"'"]; *In re Juan G., supra,* 112 Cal.App.4th at p. 5 [substantial evidence supported the juvenile court's finding the minor aided and abetted a robbery where he approached the victim with a companion, stood "within touching distance" while the companion held the victim at knifepoint, and fled with the companion]; *People v. Campbell* (1994) 25 Cal.App.4th 402, 409-410 [substantial evidence supported the jury's finding the defendant aided and abetted a robbery where he and a companion walked past, and returned to, the victims, and the defendant "assumed [a] position in front of" the victims while the companion pointed a gun at them and announced it was a robbery].)

Dante contends that, though he may have participated in the fight and eventually ended up with Joseph's speaker, there was insufficient evidence he intended to steal any of Joseph's belongings "at the time of the incident." As discussed, to be liable as an aider and abettor, the defendant must have knowledge of the unlawful purpose of the perpetrator and intend to facilitate or encourage commission of the crime. To aid and abet a robbery, the defendant "must form the intent to facilitate or encourage commission of the robbery *prior to or during the carrying away of the loot to a place of temporary safety*." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165; see *People v. McDonald* (2015) 238 Cal.App.4th 16, 24.)

14

The evidence Dante knew of a plan or intended to rob Joseph prior to the assault was not overwhelming. Because Dante and Joseph had a preexisting hostile relationship, it is possible Dante initially intended to attack Joseph, without necessarily taking his possessions. But "[w]hether a person has aided and abetted in the commission of a crime is a question of fact, and on appeal all conflicts in the evidence and attendant reasonable inferences are resolved in favor of the judgment." (*In re Juan G.*, *supra*, 112 Cal.App.4th at p. 5.) And the "function of an appellate court is not to reweigh the evidence and substitute its judgment for that of the juvenile court." (*Id.* at p. 6.)

There was circumstantial evidence from which the juvenile court could find beyond a reasonable doubt Dante, before or during the assault, formed the intent to aid and abet the taking of Joseph's belongings. (See *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599 ["Aiding and abetting may be shown by circumstantial evidence."].) Joseph testified that, when Dante's group approached him, he was wearing the backpack Brandon or Fabricio eventually took, which showed Dante knew Joseph had the backpack. When the group of boys first attacked Joseph, one of the group reached into Joseph's pockets, which suggests theft was part of the plan. After Brandon or Fabricio removed the backpack, Dante continued to fight Joseph. After the fight was over, Dante sat down with the group on the benches, while Brandon assumed control of the backpack. When Joseph asked about his backpack and Brandon told him to leave before the group beat him up again, Dante did nothing. And after the incident Dante bragged about taking the speaker, and Fabricio admitted Dante robbed someone (presumably Joseph). The

15

juvenile court could reasonably infer Dante—as the instigator of and a participant in the attack, a companion of whoever took the backpack, and the ultimate recipient of the loot—formed the intent to aid and abet the taking of whatever items of value Joseph had before the group approached. (See *People v. Burgos*, *supra*, 77 Cal.App.5th at p. 560 ["The jury could reasonably infer that [the defendant] intended to participate in a 'show of force' as one member of the larger group outnumbering the victims," where the defendant "was a 'continuous constituent' of the group that committed the robbery"], review granted; *People v. Campbell*, *supra*, 25 Cal.App.4th at p. 409 ["concerted action" by coparticipants during robbery "reasonably implies a common purpose," which demonstrated the defendant's "conduct during the attempt to rob [the victim] was a knowing and intentional effort to assist" his coparticipant].) The juvenile court could also reasonably infer Dante formed the intent to aid and abet the taking of Joseph's belongings after seeing his companions search Joseph's pockets and take the backpack during the fight. (See *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1148 ["'Aiding and abetting may be committed "on the spur of the moment," that is, as instantaneously as the criminal act itself.'"]; *People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 742 ["advance knowledge is *not* a prerequisite for liability as an aider and abettor"].)

B.    *Dante Has Not Shown His Counsel Provided Ineffective Assistance*

As stated, the People introduced a copy of a message on social media from Fabricio to Joseph stating Dante had robbed someone. Dante argues that the message was inadmissible

16

hearsay and that his trial counsel provided ineffective assistance by failing to object to its admission.[4]

"The due process right to effective assistance of counsel extends to minors in juvenile delinquency proceedings." (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1528; see *In re Gault* (1967) 387 U.S. 1, 41 [87 S.Ct. 1428].) "'"To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant."'" (*People v. Rices* (2017) 4 Cal.5th 49, 80; see *People v. Johnson* (2015) 60 Cal.4th 966, 979-980.) "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (*In re Gay* (2020) 8 Cal.5th 1059, 1086; see *Rices*, at p. 80.)

"'"A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate

---

[4] The People do not argue the message was admissible. They do argue Dante forfeited his hearsay argument by failing to object at trial. (See *People v. Perez* (2020) 9 Cal.5th 1, 7 ["Ordinarily, 'the failure to object to the admission of . . . hearsay at trial forfeits an appellate claim that such evidence was improperly admitted.'"].) While there are exceptions that may excuse an attorney's failure to object—for example, "'"where an objection would have been futile or wholly unsupported by substantive law then in existence"'" (*Perez*, at pp. 7-8)—Dante does not argue any such exception applies here.

17

assistance of counsel."'" (*People v. Brown* (2014) 59 Cal.4th 86, 109; see *People v. Gamache* (2010) 48 Cal.4th 347, 382.) "On direct appeal, if the record "'sheds no light on why counsel acted or failed to act in the manner challenged,'" we must reject the claim "'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.'"" (*People v. Caro* (2019) 7 Cal.5th 463, 488; see *People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

The record does not disclose why Dante's trial counsel did not object when the prosecutor introduced Fabricio's message.[5] Dante asserts there was no "logical tactical basis" for counsel's failure to object. But there could have been. ""Whether to object to inadmissible evidence is a tactical decision; because trial counsel's tactical decisions are accorded substantial deference [citations], failure to object seldom establishes counsel's incompetence.'"" (*People v. Rices*, *supra*, 4 Cal.5th at p. 80; accord, *People v. Maury* (2003) 30 Cal.4th 342, 416; see *People v. Mayfield* (1993) 5 Cal.4th 142, 188 [counsel's decision not to "object to the prosecution's use of hearsay evidence" is a "tactical choice[ ] . . . better evaluated by way of a petition for writ of habeas corpus"][6]; *People v. Dominguez* (1965) 236 Cal.App.2d 464,

---

[5] Although the record suggests it was a conscious, tactical decision. When the prosecutor introduced a copy of the message, she stated she had provided a copy to Dante's counsel "a while ago." When the People moved to admit the message into evidence, Dante's counsel stated, "No objection."

[6] A juvenile may file a petition for writ of habeas corpus and assert counsel provided ineffective assistance during a juvenile adjudication proceeding. (See *In re Anthony J.* (2004)

467 ["the tactical decision to object or not to object to the admission of hearsay is for counsel acting in his professional capacity"].)

As the People point out, there is at least one reason counsel for Dante may have decided not to object:  She may not have wanted to risk the prosecutor calling Fabricio to testify.  The primary evidence supporting Dante's defense was his testimony, in which he denied the allegations against him and offered a version of the assault that differed from Joseph's.  Fabricio was a percipient witness (and potential participant in the assault and robbery).  Had the People called Fabricio to testify about the message he sent Joseph, his testimony may have been inconsistent with Dante's and undermined his defense.

In addition, the People had already introduced similar admissible evidence.  The primary purpose of introducing the text message was to show that Dante took Joseph's speaker.  Joseph had already testified he received a message via social media directly from Dante bragging about taking the speaker.  Counsel for Dante therefore reasonably may have determined that objecting to the admission of the text message (even if successful) would have only a marginal benefit and could highlight the unfavorable evidence.  (See *People v. Bona* (2017) 15 Cal.App.5th 511, 522 [trial counsel was not necessarily deficient by failing to object to hearsay statements where the statements "were cumulative of other properly admitted evidence"]; see also *People v. Seumanu* (2015) 61 Cal.4th 1293, 1313 ["'[T]he decision whether to object, move to strike, or seek admonition regarding [undesired] testimony is highly tactical, *and depends upon*

_____

117 Cal.App.4th 718, 727; *In re Butterfield* (1967) 253 Cal.App.2d 794, 796-797.)

19

*counsel's evaluation of the gravity of the problem and whether objection or other responses would serve only to highlight the undesirable testimony.'"*]; *People v. Catlin* (2001) 26 Cal.4th 81, 165 [same].)

C.    *The Trial Court Erred in Setting a Term of Confinement*

Welfare and Institutions Code section 726, subdivision (d)(1), provides:  "If the minor is removed from the physical custody of the minor's parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought . . . the minor under the jurisdiction of the juvenile court."  When the minor is not removed from the physical custody of a parent, however, "the statute [does] not empower the court to specify a term of imprisonment . . . ."  (*In re Matthew A., supra,* 165 Cal.App.4th at p. 541; see *In re H.N.* (2022) 76 Cal.App.5th 962, 973; *In re A.C.* (2014) 224 Cal.App.4th 590, 591-592.)  Dante argues, the People concede, and we agree that, because the juvenile court did not remove Dante from the custody of his parents, the court erred in setting a term of confinement.  Where the court erroneously sets a term of confinement "'for a minor who is not removed from parental custody, the remedy is to strike the term.'"  (*In re H.N.,* at p. 973; see *In re A.C.,* at p. 592; *Matthew A.,* at p. 541.)

## DISPOSITION

The order setting the term of confinement at four years is stricken from the disposition order.  As modified, the orders are affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.