Filed 2/27/15  P. v. Martinez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JENNIFER NICOLE MARTINEZ,<br><br>        Defendant and Appellant. | D066480<br><br><br>(Super. Ct. No. FSB1301055) |


APPEAL from a judgment of the Superior Court of San Bernardino County, Katrina West, Judge.  Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, William M. Wood, Brendon W. Marshall, and Rachel Ferguson, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Jennifer Nicole Martinez and codefendant Richard Holguin were charged by an information with two counts of attempted murder (Pen. Code,[1] §§ 664 and 187, subd. (a); counts 1 and 2) and three counts of assault with a firearm (§ 245, subd. (a)(2); counts 3, 4, and 5). The information alleged in counts 1 and 2 that Holguin personally used a firearm (§ 12022, subd. (b)) and intentionally discharged a firearm (§ 12022.53, subd. (c)). The information also alleged in count 2 that Holguin discharged a firearm, which caused great bodily injury within the meaning of section 12022.53, subdivision (d). In counts 3, 4, and 5, the information alleged that Holguin used a firearm within the meaning of section 12022.5, subdivisions (a) and (d).

The trial court granted a defense motion for a separate jury and the case was tried before two juries.[2] Holguin's jury found Holguin guilty on the three assault counts, but was unable to reach a verdict on the two attempted murder counts. Consequently, the trial court declared a mistrial as to the attempted murder counts. Martinez's jury found Martinez guilty on all counts. The court sentenced Martinez to eight years four months in state prison.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] Martinez represents in her opening brief that Holguin moved for a separate jury.

Martinez contends that (1) her attempted murder convictions and assault convictions on the two counts involving the victims of the alleged attempted murders must be reversed because the prosecution failed to prove beyond a reasonable doubt that Holguin did not shoot the victims in self-defense; (2) at minimum, the attempted murder convictions should be reduced to attempted voluntary manslaughter because the prosecution failed to prove that Holguin did not unreasonably believe that he needed to defend Martinez and himself when he shot the victims; and (3) the attempted murder convictions must be reversed because there is insufficient evidence in the record to support a finding that Holguin intended to kill either of the victims. We affirm.

## II.

## FACTS

A. *Prosecution evidence*

The charges in this case arose from a $60 debt that Stacey Ray owed Martinez. On the day before the shooting, Martinez and Holguin ran into Stacey[3] at a casino. Holguin said, "Either you take care of [Martinez] or I'm going to take care of you." Stacey took Holguin's comment as a threat. The next day, Stacey and Martinez exchanged a number of argumentative and hostile text messages regarding the debt. Stacey testified that Martinez threatened to bring Holguin to Stacey's house to "handle" her.

---

[3] For clarity, we will refer to Stacey Ray and her spouse, Laureen Ray, by their first names.

3

Stacey's spouse, Laureen, called Martinez the night of the incident and tried to mediate the dispute between Stacey and Martinez. Laureen asked Martinez "to please not bring anybody to my home" and to "not let this escalate into a horrible situation over $60." Laureen told Martinez, "I have Lucy collectables. I have a little bit of cash. We will work something out. Let's just not make a huge mountain over such a small amount of cash." Martinez responded, "Fuck you, bitch. Fuck you. I have no respect for you for hanging out with Stacey. It's on. Fuck you." Laureen testified that Martinez "was screaming at me the whole time. . . . She was raging, very upset at this point."

Martinez told a police detective that she called Holguin on the night of the incident and asked him to come to her house to scare Stacey. When Holguin arrived at her house, Martinez told him that her roommate, Shon Soto, had a gun, and said that she wanted to use Soto's gun to scare Stacey. Martinez said that she called Holguin because everybody was afraid of him and she thought he was the only person who could help her scare Stacey.

Sometime after 6:30 p.m. on the night of the incident, Martinez called Soto and asked him if his handgun was still in the house. Soto asked Martinez why she was asking about the gun and Martinez began to tell him about the text messages between her and Stacey. Holguin then got on the phone and told Soto that he needed to borrow the gun. Soto refused to give Holguin or Martinez permission to borrow the gun. However, Holguin took the gun and drove with Martinez to Stacey and Laureen's house. The gun was loaded with snake shot rounds, which, according to Soto's testimony, are small

4

pellets with plastic tips in metal casings that disperse small projectiles in a wide pattern when fired, "to spray snakes to kind of ward them off." Martinez knew that Holguin was carrying the gun.

Stacey, Laureen, and their friend, Rocky Vandervort, were in the living room of Laureen's residence when Laureen and Rocky heard Holguin's truck drive up outside.[4] Stacey and Laureen went outside and saw Martinez and Holguin getting out of the truck. Martinez and Holguin rapidly approached Laureen. Martinez reached her first, pushed her out of the way, and said, "That's not her." Laureen saw that Holguin was pointing a gun at her. She started crying, and as she walked backward toward the house, she repeatedly said, "Oh god, please don't." When Holguin pointed the gun at Laureen a second time, she took $10 from her pocket and said, "Please take this. We will work this out. Please don't do this." Holguin told Laureen that they were not interested in her money. He said, "Just get me some fucking money."

When Stacey saw that Holguin had a gun, she turned toward the house and ran up onto the front porch. She turned around on the porch because she heard someone following her and faced Martinez, who was at the bottom of the stairs. Holguin was about four to five feet from the porch. He said, "You want to see me, bitch? You want to see me, bitch?" Vandervort had walked outside at some point during the commotion and was standing by the front door. He testified that Holguin appeared to be tracking Stacey

---

4    Holguin testified that Stacey and Laureen lived next door to each other. Vandervort's testimony indicated that the incident occurred in front of Laureen's residence.

5

with the gun.   When Stacey turned around, she extended her hand out in a stopping motion and said to Martinez, "You're not coming in my house."  Immediately after Stacey turned around, Martinez ducked and Holguin fired the gun twice.  The shots hit Stacey and Vandervort.  Vandervort was hit in the head, chest, underarm, arm, chin, lip, and neck by 58 snake shot projectiles.  Stacey was hit in the side of the head and chest by six projectiles.

On the morning after the incident, Martinez voluntarily went to the sheriff's station to relate her version of the incident.  Martinez told sheriff's deputies that her intent was for Holguin to scare Stacey, and that Holguin told Soto that he was just going to slap and pistol whip Stacey with the gun.  Martinez said that when she confronted Stacey outside Stacey's house, Stacey pointed a gun at her face, she ducked, and then heard two shots.  Martinez later admitted that she had not seen a gun in Stacey's hand.  She told the deputies that Stacey had her hands in her pockets and made a motion "like she was going to pull a gun out and shoot me."

B.   *Defense evidence*

Holguin testified that Martinez called him on the night of the incident and was crying.  She asked Holguin if he knew who Little John and Damien were because Stacey had threatened to have them come to Martinez's house to beat her up.  Holguin knew Little John and Damien "from the past" and testified that they were "really not too nice," and that Little John had been a member of a prison gang.  Holguin went to Martinez's house immediately after the phone call because he was very concerned about Stacey's

6

threat.   After Holguin told Soto that he needed to borrow Soto's gun, Martinez brought Holguin a box containing the gun, which was unloaded.  Holguin testified that the box contained both snake shot bullets and lethal bullets, and that he loaded the gun with snake shot rounds because he was a "bad shot" and "didn't want to hurt nobody."

When Holguin and Martinez parked near Laureen's house, Stacey and Laureen were outside.  Holguin and Martinez got out of their vehicle and Martinez and Stacey started yelling at each other.  Stacey told Martinez to "come here" and Martinez approached Stacey.  Stacey ran into the house and then ran back out with someone behind her.  When she came back out, she extended her arms and pointed a gun at Martinez's face.  Holguin told Martinez to run.  As Martinez ran away, Stacey followed her with the gun and fired a shot. Holguin reacted by firing Soto's gun, which was in his jacket pocket. He did not take the gun out of his pocket; he "raised [his] whole jacket, pocket and all, and fired right through parts of the pocket."  He then fled because Stacey still had a gun in her hand.

## III.

## DISCUSSION

A.   *Standard of Review*

Martinez's contentions on appeal challenge the sufficiency of the evidence to support the jury's verdict.  "In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one.  ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could

7

find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' [Citations.] [¶] ' "Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.)

B.      *Substantial Evidence Supports the Jury's Finding that Holguin Did Not Shoot in Self-Defense or in Defense of Martinez*

The court instructed the jury that it had to decide whether Martinez was guilty of the attempted murder counts as an aider and abettor. The court instructed that Martinez was guilty of attempted murder if the prosecution proved that she originally intended to aid and abet the commission of assault with a firearm and that attempted murder was the natural and probable consequence of assault with a firearm. The court further instructed that if the jury found that Holguin had acted in complete self-defense or defense of another, it must find Martinez not guilty of any crime, and that "[a]n attempted killing that would otherwise be attempted murder is reduced to attempted voluntary

8

manslaughter if [Holguin] attempted to kill a person because he acted in imperfect self-defense/defense of another, and [Martinez] aided and abetted in that attempt."

The court instructed the jury on self-defense/defense of another and imperfect self-defense/defense of another in accordance with CALCRIM Nos. 3470 and 604, respectively. The court instructed that Holguin acted in lawful self-defense/defense of another if he reasonably believed that he or Martinez was in imminent danger of suffering bodily injury or being touched unlawfully and that immediate use of force was necessary to defend against that danger, and he used no more force than was reasonably necessary to defend against that danger. The court instructed that Holguin acted in imperfect self-defense/defense of another if he (1) took an indirect but ineffective step toward killing a person; (2) intended to kill when he acted; (3) believed that he or Martinez was in imminent danger of being killed or suffering great bodily injury or being touched unlawfully and that immediate use of force was necessary to defend against that danger; (4) believed that the immediate use of deadly force was necessary to defend against the danger; and (5) at least one of those beliefs was unreasonable. The court further instructed that the People had the burden of proving beyond a reasonable doubt that Holguin did not act in self-defense/defense of another or imperfect self-defense/defense of another. In convicting Martinez of attempted murder, the jury necessarily rejected these defense theories.

We conclude that substantial evidence supports the jury's finding that Holguin did not act in self-defense or defense of Martinez when he shot Stacey and Vandervort. The

9

jury was entitled to reject Holguin's version of the shooting and the events leading up to it and to give credence to the testimony of the prosecution witnesses. (*People v. Bobo* (1960) 184 Cal.App.2d 285, 289.) Stacey testified that the day before the shooting, when she encountered Martinez and Holguin at a casino, Holguin threatened her by saying, "Either you take care of [Martinez] or I'm going to take care of you." The next day, in a text message to Stacey, Martinez threatened to bring Holguin to Stacey's house to "handle" her. Holguin told Soto that he was going to slap and pistol whip Stacey with Soto's gun. There was substantial evidence to support the following version of the shooting incident: When Holguin and Martinez arrived at the scene of the incident, they rapidly approached Laureen, and Holguin twice pointed the gun at her. After Martinez told Holguin that Laureen was "not her," Holguin said to Stacey as she ran up the steps onto the porch, "You want to see me, bitch? You want to see me, bitch?" Stacey turned around and extended her hand in a stopping motion and Holguin shot at her and Vandervort.

Based on the prosecution's evidence of Holguin's and Martinez's actions before and during the incident, the jury could reasonably conclude that Holguin and Martinez drove to Stacey and Laureen's residence with the intent to instigate a violent confrontation with Stacey and whomever they perceived to be supporting her in her dispute with Martinez. The jury could further reasonably conclude that Stacey was unarmed, that Holguin knew she was unarmed, and that it was Holguin's violent intentions, and not any action by Stacey, that impelled him to shoot at Stacey and

10

Vandervort—i.e., that Holguin did not act on the belief that he needed to defend either himself or Martinez.

Further, Vandervort testified that Holguin pulled the gun out, tracked Stacey with it, and then turned the gun and fired it "right at the door" where Vandervort was standing. The jury could reasonably infer from Vandervort's testimony that Holguin deliberately shot at Vandervort, and did not act in defense of himself or Martinez based on any action on the part of Stacey.

C.    *Substantial Evidence Supports the Jury's Finding that Holguin Shot at Stacey and Vandervort with the Intent to Kill*

To convict Martinez of attempted murder counts as an aider and abettor, the jury had to find that Holguin intended to kill Stacey and Vandervort.  (*People v. Smith, supra,* 37 Cal.4that p. 737.)[5]  The intent to kill required to convict a defendant of attempted murder may be inferred from the defendant's acts and the circumstances of the crime. (*Id.* at p. 741.)

The same evidence that supports the jury's rejection of the defense theories that Holguin shot in self-defense or defense of Martinez supports the jury's finding that Holguin shot Stacey and Vandervort with the intent to kill.  The day before the shooting incident, Holguin had threatened to "take care" of Stacey if she did not pay her debt to Martinez.  When Holguin arrived at Laureen's residence, he pointed the gun at Laureen's

---

[5]    The court instructed the jury in accordance with CALCRIM No. 600 that in order to prove that Martinez was guilty of attempted murder, the prosecution had to prove that Holguin took at least one direct but ineffective step toward killing another person with the intent to kill that person.

11

face until Martinez told him that Laureen was not Stacey. When Vandervort walked out the front door onto the porch during the incident, he saw Holguin tracking Stacey with the gun just before he fired it "right at the door" where Vandervort was standing. Holguin admitted in his trial testimony that he fired the gun at "two people," one of whom "pointed a gun at us" (i.e., Stacey). The scatter pattern of the snake shot on the door of Laureen's residence that Vandervort was standing near indicated that Holguin shot at Vandervort from a distance of 15 to 20 feet, and that Holguin was about four to five feet from the porch where Stacey was standing. " 'The act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill . . . ." ' " (*People v. Smith, supra,* 37 Cal.4th at p. 741; see *People v. Jackson* (1989) 49 Cal.3d 1170, 1201 [firing shotgun toward victim from close range permitted an inference of intent to kill].)

The fact that the gun was loaded with snake shot, which substantially reduced the chances of a fatality, does not compel a finding that Holguin lacked the intent to kill. Contrary to Holguin's testimony that the gun was unloaded and that he chose to load it with snake shot instead of with the more lethal bullets that were in the box containing the gun, Soto testified that he kept the gun loaded with snake shot cartridges. Soto further testified that he had "real bullets" but that they were hidden in his top dresser drawer. He did not notice anything indicating that his drawer had been ransacked and he never told Martinez that he had real bullets. The real bullets were not near the gun; they were in the

12

same room as the gun, but on the opposite side of the room. Thus, the jury could reasonably infer that Holguin knew the gun was loaded when he took it to Stacey's residence but did not know that it was loaded with snake shot instead of real bullets, and that when he shot at Stacey and Vandervort, he intended to kill them.

Even if the jury concluded that Holguin knew the gun was loaded with snake shot, it could have reasonably inferred Holguin's intent to kill from the close range from which he shot Stacey and Vandervort. A deputy sheriff testified at trial that snake shot bullets can be fatal to humans when fired from a distance of a few feet, and could be fatal even fired at a distance of 15 to 20 feet if the snake shot entered a person's ear or eye. Although the shots that Holguin fired were not lethal, the jury could have reasonably inferred that Holguin was ignorant of the range of lethality of snake shot and that he fired the gun with the belief that the bullets it contained would be lethal to Stacey and Vandervort at the distance from which he fired the gun.

The jury was also entitled to view Holguin's flight immediately after the shooting as evidence of Holguin's consciousness of guilt of attempted murder.[6] Martinez argues that the fact that Holguin "was conscious that he was guilty of *some* crime cannot reasonably be construed as evidence that he was conscious that he was guilty of *all* charged crimes." However, it is immaterial that Holguin's flight could be attributed to his

---

[6]     The court instructed the jury on flight as consciousness of guilt in accordance with CALCRIM No. 372 as follows: "If the defendant fled immediately after the crime was committed, that conduct may show that she was aware of her guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

consciousness of guilt of assault with a firearm.  As the California Supreme Court has explained, "[i]t is for the jury to determine to which offenses, if any, the inference [of consciousness of guilt] should apply."  (*People v. Mendoza* (2000) 24 Cal.4th 130, 180.) The evidence sufficiently supports the jury's finding that Holguin shot at Stacey and Vandervort with the intent to kill.

IV.

DISPOSITION

The judgment is affirmed.

_____
AARON, J.

WE CONCUR:

_____
HUFFMAN, Acting P. J.

_____
O'ROURKE, J.

14